The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on May 5, 2022, which may be different from its entry on the record.

**IT IS SO ORDERED.**

**Dated: May 5, 2022**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| RICHARD M. OSBORNE, SR., | ) | Case No. 17-17361 |
| (Deceased) | ) | |
|     Debtor. | ) | Judge Arthur I. Harris |
| | ) | |
| | ) | |
| FIRST NATIONAL BANK OF | ) | |
| PENNSYLVANIA, | ) | |
|     Plaintiff. | ) | |
| | ) | Adversary Proceeding |
| v. | ) | No. 20-1005 |
| | ) | |
| RICHARD M. OSBORNE, SR., | ) | |
| (Deceased) | ) | |
|     Defendant. | ) | |

## MEMORANDUM OF OPINION[1]

This case is currently before the Court on the unopposed motion for summary judgment by the creditor-plaintiff, First National Bank of Pennsylvania ("the creditor"). The creditor argues that Richard M. Osborne, Sr. ("the debtor"),

---

[1] This Opinion is not intended for official publication.

who died on June 4, 2021, should be denied a discharge in his chapter 7 case under 11 U.S.C. § 727(a)(5) because he failed to sufficiently explain the loss or unavailability of substantial assets that should have been available to creditors. For the reasons that follow, the Court holds that the creditor is not entitled to summary judgment under 11 U.S.C. § 727(a)(5). Nevertheless, the Court is inclined to grant summary judgment under a different ground—11 U.S.C. § 727(a)(2). While this ground was included in the amended complaint, the creditor did not include this ground in its summary judgment motion. Under Bankruptcy Rule 7056 and Civil Rule 56(f), the Court will give Brandon Dynes, Special Administrator for the Estate of Richard M. Osborne, Sr., until **June 3, 2022**, to respond to the Court's memorandum of opinion.

## JURISDICTION

This is a core proceeding under 28 U.SC. § 157(b)(2)(I) and (J). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 157(a) and 1334 and Local General Order 2012-7, entered by the United States District Court for the Northern District of Ohio.

## PROCEDURAL HISTORY

On December 17, 2017, the debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code (Case No. 17-17361). On July 3, 2019, the

Court granted the debtor's motion to convert his case from chapter 11 to chapter 7 (Case No 17-17361, Docket No. 482). On January 15, 2020, the creditor filed this adversary complaint, which the creditor later amended on May 20, 2020 (Docket No. 12). The amended complaint seeks to determine the dischargeability of certain debts owed under 11 U.S.C. § 523(a)(2)(A) and (a)(6) (Counts I and II) and objects to the debtor receiving a discharge under 11 U.S.C. § 727(a)(2), (a)(3), (a)(4)(a), and (a)(5) (Counts III through VI). On June 25, 2020, the debtor filed an answer to the amended complaint (Docket No. 13). The United States Trustee and chapter 7 trustee both filed similar complaints objecting to the debtor receiving a discharge (Adv. Proc. Nos. 20-1003 and 20-1004, respectively).

On June 4, 2021, the debtor died (Docket No. 18). On July 27, 2021, the Court granted the request of the debtor's attorney to withdraw from the main bankruptcy case and all associated adversary proceedings, including this one, because of the debtor's death (Docket No. 23). On September 2, 2021, the Court granted the creditor's request to substitute the personal representative(s) of the probate estate of Richard M. Osborne, Sr., for the deceased debtor pursuant to Bankruptcy Rule 7025 and Civil Rule 25(a) (Docket No. 26).

On February 28, 2022, the creditor moved for summary judgment and served a copy of the motion on Brandon Dynes, the Special Administrator for the Estate

3

of Richard M. Osborne, Sr. The creditor's motion only seeks summary judgment with respect to Count VI of the amended complaint, *i.e.*, denial of discharge under 11 U.S.C. § 727(a)(5). The Court set April 8, 2022, as the deadline for filing and serving a response (Docket No. 34). No response has been filed.

## FACTUAL HISTORY

Unless otherwise indicated, the following facts are undisputed. The debtor was a sophisticated businessman with dealings throughout northern Ohio, primarily in real estate and the oil and gas industry. He had an interest in numerous parcels of real property—over 300—and an interest in up to 225 different business entities. He employed many individuals at his various companies. Many of these individuals also assisted him with his personal affairs. The debtor blurred the lines between himself and his various companies and between the various companies themselves. In the words of the debtor's long-time attorney, corporate "formalities were not necessarily observed." Pl.'s Mot. Summ. J., Ex. 6, 23:14-15. During the pendency of his bankruptcy case, the debtor amended his schedules and documents nine times. Each time he disclosed more and more of his many financial interests and properties.

To address the motion for summary judgment before it, the Court will concentrate its factual analysis on four pieces of property: three parcels of real

4

estate and a metal object referred to as "the gold blob." The three parcels of real estate are: one on Lake Shore Boulevard in Willoughby, Ohio (the "Lake Shore" property), another on Heisley Road in Mentor, Ohio (the "Heisley Road" property), and a third at 1344 West Jackson Street in Painesville, Ohio (the "1344 West Jackson" property). The gold blob is a metal object containing gold and silver, weighing a little over eight pounds, and purportedly recovered from the *Nuestra Señora de Atocha*, a Spanish treasure galleon that sank off the coast of the Florida Keys in 1622. *See Fla. Dep't of State v. Treasure Salvors*, 458 U.S. 670, 673, 102 S. Ct. 3304, 3308 (1982) ("Battered by a tropical hurricane, the *Nuestra Senora de Atocha* . . . carrying a cargo of New World treasure sank in 1622, 40 nautical miles west of what is today Key West, Fla."). The debtor did not initially disclose in his schedules and documents his interest in the three properties or the gold blob.

On April 23, 2015, the debtor bought the Lake Shore property, a vacant lot, at a sheriff's sale. He purchased it in the name of Lake Shore Blvd, LLC. But at the time, Lake Shore Blvd, LLC did not exist. On July 27, 2018, the debtor formed Lake Shore Blvd, LLC, over six months after filing for bankruptcy. The debtor is the sole member of Lake Shore Blvd, LLC. On January 29, 2019, the debtor sold the Lake Shore property for $27,000.

5

Similarly, on October 23, 2015, a corporation the debtor controlled transferred the Heisley Road property to Hamilton-Mercantile LLC. The debtor formed Hamilton-Mercantile LLC approximately three years later on September 14, 2018, over eight months after filing for bankruptcy. The debtor is the sole member of Hamilton-Mercantile LLC. On October 10, 2018, the debtor granted OsAir, Inc.—a corporation the debtor had a 95 percent interest in—a mortgage in the amount of $950,000 for money he personally owed to OsAir, Inc. On October 11, 2018, the debtor sold the Heisley Road property for around $445,500.

The debtor bought the 1344 West Jackson Street property on December 15, 2014, in the name of 1344 West Jackson St. LLC at another sheriff's sale. The debtor did not form 1344 West Jackson St. LLC until November 16, 2018, over ten months after filing for bankruptcy. The debtor is the sole member of 1344 West Jackson St. LLC.

As for the gold blob, the debtor acquired it from his mother's estate. He explained that his father was one of the original investors in Mel Fisher, the treasure hunter who discovered the wreck of the *Nuestra Señora de Atocha* off the coast of Florida. The debtor told his son, "Let's see what [the gold blob's] worth. . . . Whatever I get, I'll split it with you." Pl.'s Mot. Summ. J.,

Ex. 2, 32:21-23. His son sold the gold blob around June 6, 2017, to a company in Cleveland for approximately $80,000. The debtor kept half of the money and gave the remainder to his son and daughter.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56, which Bankruptcy Rule 7056 makes applicable to bankruptcy proceedings, provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. Rule 56 was amended in 2010; however, "[t]he commentary to Rule 56 cautions that the 2010 amendments were not intended to effect a substantive change in the summary-judgment standard." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012). "A court reviewing a motion for summary judgment cannot weigh the evidence or make credibility determinations." *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 569 (6th Cir. 2012) (citation omitted). "Instead, the evidence must be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party." *Id.* at 570.

"Even where intent is at issue, 'summary judgment is appropriate if all reasonable inferences defeat the claims of one side . . . .' " *Buckeye Ret. Co.,*

7

*LLC v. Swegan (In re Swegan)*, 383 B.R. 646, 656 (B.A.P. 6th Cir. 2008) (quoting *Gertsch v. Johnson & Johnson, Fin. Corp. (In re Gertsch)*, 237 B.R. 160, 165 (B.A.P. 9th Cir. 1999)). When the debtor's state of mind is at issue, a court should only grant summary judgment when "the evidence is so one sided that reasonable minds could not differ as to the only rational outcome." *Carter-Jones Lumber Co. v. Beatty (In re Beatty)*, 583 B.R. 128, 138 (Bankr. N.D. Ohio 2018); *see also Hunter v. Sowers (In re Sowers)*, 229 B.R. 151, 159 (Bankr. N.D. Ohio 1998) (summary judgment appropriate when "there is no possibility that the facts presented at trial would demonstrate a lack of fraud or intent") (citations omitted).

If a motion for summary judgment is unopposed, the Court can still determine that the moving party is not entitled to summary judgment on the grounds stated. "Where a party fails to respond to a motion for summary judgment, . . . the court must nevertheless satisfy itself that the moving party has met the demands of Fed. R. Civ. P. 56 before granting the motion." *Smith v. Downey (In re Downey)*, No. 18-3040, 2018 WL 6060344, at *2 (Bankr. N.D. Ohio Nov. 19, 2018) (citing *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 407 (6th Cir. 1992)). A court may not use a party's failure to respond "as a reason for granting summary judgment without first examining all the materials properly before it under Rule 56(c)." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630

8

(6th Cir. 2014) (quoting *Smith v. Hudson*, 600 F.2d 60, 65 (6th Cir. 1979). Additionally, Rule 56(f) empowers a court to issue a judgment independent of the motions filed. Subdivision (f) of Rule 56 provides:

> After giving notice and a reasonable time to respond, the court may:
>
> (1) grant summary judgment for a nonmovant;
>
> (2) grant the motion on grounds not raised by a party; or
>
> (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

DISCUSSION

The party seeking to deny the debtor's discharge must prove each element under section 727 by a preponderance of the evidence. *See* Fed. R. Bankr. P. 4005; *Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654, 659 (1991); *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000); *Barclays/Am. Bus. Credit Inc. v. Adams (In re Adams)*, 31 F.3d 389, 393 (6th Cir. 1994). An action to deny the debtor a discharge is to be construed liberally in favor of the debtor and strictly against the party seeking denial of discharge. *See Keeney*, 227 F.3d at 683.

A. 11 U.S.C. § 727(a)(5)

Section 727(a)(5) denies a debtor a discharge when "the debtor has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities." First, the party seeking to deny the debtor a discharge must

9

"identify assets that the debtor owned at one time and subsequently claims to no longer possess." *Vara v. McDonald (In re McDonald)*, 29 F.4th 817, 822 (6th Cir. 2022). The burden then shifts to the debtor to "offer a satisfactory explanation for the loss of the identified assets." *Id.* Section 727(a)(5) does not require the plaintiff to prove wrongful intent. *Id.* at 821. Rather, it imposes strict liability when the debtor does not provide a satisfactory explanation. *Id.* at 823 (citing *Baker v. Reed (In re Reed)*, 310 B.R. 363, 368 (Bankr. N.D. Ohio 2004)).

In its motion, the creditor identifies a total of three assets that the debtor once owned, then sold, but "failed to account for the proceeds from the sales." Pl.'s Mot. Summ. J. 15 & 17. First, the creditor points to the Lake Shore and Heisley Road properties—the two properties that the debtor acquired in the name of non-existent limited liability corporations, later formed postpetition, then sold. While the debtor admitted that he sold the properties postpetition, the record before the Court does not indicate whether the debtor was asked to explain what happened to the proceeds from the sales.

Second, the creditor alleges that the debtor failed to "sufficiently explain what happened to the proceeds" from the sale of the gold blob. Pl.'s Mot. Summ. J. 17. At the meeting of creditors, the debtor explained that he bought the gold blob for $3,000 and told his son to "see what it's worth," promising, "Whatever I

10

get, I'll split it with you." Pl.'s Mot. Summ. J., Ex. 2, 32:21-23. The son sold the gold blob for approximately $80,000 of which the debtor kept half. Again, the record before the Court does not indicate whether the debtor was asked to explain what he did with his share of the sale proceeds.

Rather than make the case for a debtor who cannot explain what he did with his money, the creditor's motion for summary judgment lists—in explicit detail—the many ways in which the debtor spent his significant amounts of money. Pl.'s Mot. Summ. J. 8-13. The bank statements evidence that the debtor spent $43,756.12 on travel and lodging and $11,950.16 dining at a single restaurant in Chardon, Ohio, all during the roughly one-year timeframe after the debtor filed for bankruptcy. These expenses may be "exorbitant," "lavish," and maybe even "outrageous," but they are not an unsatisfactory explanation of the ways in which the debtor spent his money.

Was the money the debtor used to fund his "exorbitant" lifestyle composed of the proceeds from the sale of the gold blob and the two properties discussed above? The record is unclear. It is unclear because the debtor was not asked. In order for an explanation to be satisfactory or unsatisfactory, there must first be an *explanation*. *See, e.g., Wyndham Vacation Resorts, Inc. v. MacMillan (In re MacMillan)*, No. 2:16-BK-21559-NB, 2020 WL 3634255, at *3-4 (Bankr. C.D.

Cal. Apr. 9, 2020) ("There is insufficient evidence that Debtors were ever asked to explain their loss or deficiency of these alleged assets. . . . Without reference to specific questions that Debtors should have answered differently, there is no basis for summary judgment under § 727(a)(5)."). If the debtor were asked the question, his explanation may well have been unsatisfactory given the evasive answers the debtor gave to many of the other questions he was asked. *See McDonald*, 29 F.4th at 823 ("At its core, a satisfactory explanation must contain more than guesses and conclusory statements."). But that is not the evidence before the Court. Therefore, when the Court views the available evidence in the light most favorable to the debtor, there is a genuine issue of material fact, and summary judgment, even if unopposed, is not appropriate under section 727(a)(5).

## B. 11 U.S.C. § 727(a)(2)(B)

Section 727(a)(2)(B) denies a debtor a discharge when:

> the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—property of the estate, after the date of the filing of petition[.]

The Sixth Circuit created a two-part test for the analogous section 727(a)(2)(A), which concerns prepetition transfers, stating "[t]his section encompasses two elements: 1) a disposition of property, such as concealment, and 2) 'a subjective

12

intent on the debtor's part to hinder, delay or defraud a creditor through the act of disposing of the property.' " *Keeney*, 227 F.3d at 683 (quoting *Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240 (9th Cir. 1997)). Other courts converted the additional requirements of section 727(a)(2)(B) into a four-part test that requires the plaintiff to prove: "1) the debtor transferred or concealed property, (2) such property constituted property of the estate, (3) the transfer or concealment occurred after the filing of the bankruptcy petition, and (4) the transfer or concealment was made with the intent to defraud the [creditor]." *Helbling v. Holmes (In re Holmes)*, No. 07-17017, 2008 WL 6192253, at *3 (Bankr. N.D. Ohio Dec. 3, 2008) (quoting *Sowers*, 229 B.R. at 156); *accord United States Tr. v. Wengerd (In re Wengerd)*, No. 09-62720, 2010 Bankr. LEXIS 6415, at *6 (Bankr. N.D. Ohio Dec. 6, 2010).

Section 101(54)(D) "very broadly" defines a transfer as any "mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or an interest in property." *Meoli v. The Huntington Nat'l Bank*, 848 F.3d 716, 728 n.6 (6th Cir. 2017). Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). A debtor has a duty under the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure not to conceal property of the estate after filing a petition. *See, e.g.*, Fed. R. Bankr. P. 4002.

13

The first three elements of the four-part test look to be met. There appears to be no genuine issue of material fact that the debtor—or an entity the debtor controlled—acquired the Lake Shore, Heisley Road, and 1344 West Jackson properties prepetition, in the name of LLCs that he formed postpetition, and that he sold two of the properties soon after forming these LLCs. The debtor thus transferred the properties postpetition by forming the LLCs that purported to hold them, and further transferred two of the properties postpetition by selling them. All three properties were property of the bankruptcy estate under the expansive definition of section 541. The only question left is whether the debtor transferred the properties with the intent to defraud the creditor.

The fourth element requires the debtor to act with actual intent as opposed to constructive intent. *Sowers*, 229 B.R. at 157 (citing *Bank of Pa. v. Adlman*, 541 F.2d 999, 1003 (2d Cir. 1976)). Actual intent may be proved through circumstantial evidence or inferred from the debtor's conduct. *Id.* (citations omitted). One act may be sufficient to show actual intent, but "a continuing pattern of wrongful behavior is a stronger indication of actual intent." *Id.* As actual intent is difficult to prove, "courts may rely on the badges of fraud." *Barbacci v. Worrell (In re Worrell)*, No. 12-61021, 2013 WL 4525227, at *3 (Bankr. N.D. Ohio Aug. 26, 2013) (citing *United States. Tr. v. Zhang (In re*

14

*Zhang)*, 463 B.R. 66, 78 (Bankr. S.D. Ohio 2012)). Two badges that are relevant to this case are: "the cumulative effect of the transactions and course of conduct after the onset of financial difficulties" and "the general chronology and timing of events." *Id.* (quoting *C & H Elec v. Newell (In re Newell)*, 321 B.R. 885, 890 (Bankr. N.D. Ohio 2005)). "If the plaintiff establishes the existence of badges of fraud, the burden shifts to the debtor to rebut the presumption." *Wise v. Wise (In re Wise)*, 590 B.R. 401, 435 (Bankr. E.D. Mich. 2018); *see also Adams*, 31 F.3d at 393 n.1 (rejecting that a creditor must "conclusively show" fraud and suggesting that if a creditor makes out a *prima facie* case of actual fraud, then "the burden shifts to the debtor to come forth with a reasonable explanation . . . as to why there was no fraud.").

To achieve the ultimate transfer and sale of these properties, the debtor had to perform a series of independent actions. Any one of these actions considered in isolation can perhaps be explained as an innocent mistake. But taken together, they demonstrate the debtor's actual intent. First, the debtor failed to disclose his ownership interest in the three properties and the not-yet-formed LLCs that owned them. Next, months after filing for bankruptcy, the debtor deliberately drafted articles of organization for the three LLCs and filed them with the state. The debtor did not stop there. He then sold the Heisley Road property for $445,500

15

only thirty-five days after forming Hamilton-Mercantile LLC. And he later sold the Lake Shore property for $27,000 approximately six months after forming Lake Shore Blvd, LLC. Both of these sales occurred many months after the debtor filed for bankruptcy. The timing of these sales confirms that the debtor formed the LLCs with the purpose to then sell the properties. Without an existent LLC owning the properties, the debtor presumably could not validly sell them. *See, e.g., Swope v. Huntington Nat'l Bank (In re Devore)*, 2011 WL 2580117 at *3, (Bankr. N.D. Ohio June 27, 2011) (finding void under Ohio law a transfer of property to a non-existent LLC). Moreover, these three properties are part of a larger pattern of not disclosing assets (for example, the gold blob), excessive spending while in bankruptcy, and disregarding the corporate form. *See Sowers*, 229 B.R. at 157 ("[E]ven if this Court were to believe that the foregoing mentioned omissions were merely the result of some sort of oversight or ignorance on the part of the Defendants, this notion becomes preposterous when combined with the many other omissions of the Defendants."). Additionally, the debtor was a sophisticated businessman, with intimate knowledge of the process and meaning of forming an LLC, given the over 200 LLCs he had an interest in. *See, e.g., Kraus Anderson Capital, Inc. v. Bradley (In re Bradley)*, 507 B.R. 192, 203 (B.A.P. 6th Cir. 2014) (citing *Trust Co. Bank v. Ricketts (In re Ricketts)*, 16 B.R. 833, 834-35 (Bankr.

N.D. Ga. 1982)) (holding a sophisticated businessperson to a "higher standard" in the context of section 523(a)(6)). When viewed in light of the debtor's entire course of conduct, his transfer of three, and subsequent sale of two, properties is evidence of the debtor's actual intent to defraud the creditor. No reasonable inference appears to defeat this conclusion.

Although the Court is inclined to grant summary judgment in favor of the creditor under section 727(a)(2)(B), the creditor did not include this ground in its summary judgment motion. Therefore, under Bankruptcy Rule 7056 and Civil Rule 56(f), the Court will give Brandon Dynes, Special Administrator for the Estate of Richard M. Osborne, Sr., until June 3, 2022, to respond to the Court's memorandum of opinion.

In addition, the Court makes no determination regarding the other grounds for denying the debtor a discharge alleged in the creditor's amended complaint. *See Gandy v. Schuchardt (In re Gandy)*, 645 F. App'x 348, 352 (6th Cir. 2016) (citing *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 177 (5th Cir. 1992)) ("[i]f any one of these grounds justifies the denial of discharge, we need not decide the propriety of the others.").

CONCLUSION

For the reasons stated above, the Court holds that the creditor is not entitled to summary judgment under 11 U.S.C. § 727(a)(5). Nevertheless, the Court is inclined to grant summary judgment under a different ground—11 U.S.C. § 727(a)(2). Because the creditor did not include this ground in its summary judgment motion, under Bankruptcy Rule 7056 and Civil Rule 56(f) the Court will give Brandon Dynes, Special Administrator for the Estate of Richard M. Osborne, Sr., until **June 3, 2022**, to respond to the Court's memorandum of opinion. If no timely response is filed, the Court will grant summary judgment in favor of the creditor under section 727(a)(2)(B) for the reasons stated in this memorandum of opinion. If a timely response is filed, the Court will give the creditor until **June 17, 2022**, to file an optional reply brief and then take the matter under advisement.

IT IS SO ORDERED.